BOTTLERS SEAL COMPANY, Suing on Behalf of Itself and
Other Creditors of TEAR OFF BOTTLE SEAL COMPANY,
Respondent, *v.* ROY A. RAINEY et al., Appellants.

Corporation — stockholders — creditor's suit against holders
of stock not fully paid for — no distinction may be drawn
between debts incurred in ordinary course of business and
indebtedness incurred for royalties under license agreement —
stock issued in part payment of license agreement transferred
to corporation at a valuation largely in excess of amount paid
plaintiff therefor — plaintiff not estopped from denying that
value of license was in excess of amount he received for it —
immaterial that contract, under which liability to plaintiff
arises, was instrument used by directors to evade statutory
prohibition — plaintiff excused, by bankruptcy proceedings
against corporation, from bringing action for royalties when
due — liability of stockholders joint, not several, and where
some have not been served or appeared, proceedings should
be taken to bring them in as parties or complaint dismissed.

1. Under section 70 of the Stock Corporation Law (Cons. Laws,
ch. 59) the common stockholders of a corporation are liable to one
who sues as a creditor, not for a debt incurred in the ordinary course
of business after incorporation, but for unpaid installments of annual
guaranteed royalties, part of the consideration of a license agreement
for the use of a patent executed by such creditor to a third party
which license agreement was, with the creditor's consent, assigned to
the corporation which assumed the obligations thereof and covenanted
to perform and carry them out. No ground for distinction between
debts incurred in the ordinary course of business and indebtedness

incurred for royalties under a license agreement is pointed out, and under the broad terms of the statute none may be drawn.

2. Where from the findings it appears that the consideration for the license agreement paid by the third party, who in entering into the agreement with the plaintiff acted merely as a promoter in behalf and in the interest of the persons who were the directors and incorporators of the corporation in suit, was but $25,000, while the purchase price which the directors of the corporation agreed to pay for the license agreement was $927,500, of which sum $27,500 was paid in cash and $900,000 by the issuance of stocks to the said third party or to his nominees, in addition to which the corporation bound itself to pay the royalties heretofore referred to, it cannot be said as matter of law that the directors in good faith and in the exercise of an honest discretion placed upon the contract a fair valuation and, where the plaintiff took no part in the fixing of the valuation, he is not estopped from denying that the value of the license was in excess of $25,000.

3. The statute under those circumstances imposes upon every holder of the shares of stock so issued personal liability to the creditors of the corporation, and it is immaterial that the contract, under which the liability to the plaintiff arises, was the instrument which the directors used in attempt to evade the statutory prohibition against the issue of stock except for full value. Since the plaintiff did not participate in, or consent to, the overvaluation it may enforce the remedy given to all creditors.

4. A petition in bankruptcy having been filed against the corporation before the last installment of the royalties sued for became due and an injunction issued restraining all creditors of the bankrupt from instituting any action against it, plaintiff was excused from bringing an action against the corporation for the royalties when due in compliance with section 73 of the Stock Corporation Law, limiting personal liability of stockholders for debts of the corporation to cases where judgment therefor has been recovered against the corporation and an execution returned unsatisfied.

5. All the common stockholders having been named defendants, but thirty-five of them never having been served nor appeared in the action, and there being an express finding in the decision that no proof had been offered " that said defendants or any of them at any time were beyond the jurisdiction of this court or insolvent," it was error to permit the proceeding to proceed against the defendants served and to adjudicate that their liability is several. The established policy of our law is that the liability of a stockholder for corporate indebtedness may be enforced only by action in equity, in which all stockholders subject to the same liability must be joined,

unless the statute otherwise provides and the statute under consideration creates no several liability. (*Warth* v. *Moore Blind Stitcher & Overseamer Co.*, 146 App. Div. 28; affd., 207 N. Y. 673, followed.)

6. The complaint, however, should not be dismissed, but the case remitted to the Supreme Court for appropriate proceedings to bring in the necessary parties.

*Bottlers Seal Co.* v. *Rainey*, 216 App. Div. 702, reversed.

(Argued May 27, 1926; decided July 9, 1926.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 16, 1926, unanimously affirming an interlocutory judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The following questions were certified:

" 1. Are the common stockholders of a corporation liable under section 70 of the Stock Corporation Law to one who sues as a creditor, not for a debt incurred in the ordinary course of business after incorporation, but for unpaid installments of annual guaranteed royalties, part of the consideration in a license agreement for the use of a patent executed by such creditor to a third party, which license agreement was with the creditor's consent, assigned to the corporation at the time of its incorporation?

" 2. In an action in equity brought by a creditor of a corporation against all the common stockholders to enforce the liability provided in section 70 of the Stock Corporation Law, should the complaint be dismissed when it is found as a fact that thirty-five out of the fifty-seven stockholders named as defendants in the summons and complaint have not been served nor have they or any of them appeared in the action and no proof has been offered that any of them were beyond the jurisdiction of the court, or insolvent?

" 3. In such an action based on the allegation that the common stock of the bankrupt corporation was

issued for an assignment to it of a license agreement made by the plaintiff for the use of a patent owned by plaintiff, expressing a consideration of $25,000 cash on execution which was paid and a further consideration of fixed annual guaranteed payments by way of royalties during the term of the license, amounting to $320,000 more, is the plaintiff estopped to deny that the value of the license was in excess of $25,000?

" 4. In an action to enforce the liability of stockholders for unpaid stock to creditors of the corporation under section 70 of the Stock Corporation Law, in which the liability is established by an interlocutory judgment, should the amount of each stockholder's liability bear interest from the date when he acquired his stock?

" 5. When, in an action by a creditor to enforce the liability of stockholders under section 70 of the Stock Corporation Law, it is found that a bankruptcy proceeding was instituted against the corporation, and an injunction was issued therein restraining all creditors of the bankrupt from instituting any action against it, or from issuing any execution or other writ against its property; and it is found that a portion of plaintiff's claim, to wit, $20,000, did not become due and absolutely owing by the corporation to the plaintiff until after the petition in bankruptcy had been filed; and that the plaintiff had never taken any of the steps required by section 73 of the Stock Corporation Law, and had never asked permission of the Bankruptcy Court to take such steps as to such $20,000; did such bankruptcy proceeding and injunction operate as a bar to a compliance by plaintiff with the provisions of section 73, and as an excuse for non-compliance therewith, as to the $20,000 of its claim that was not due and absolutely owing when the petition in bankruptcy was filed? "

*John Godfrey Saxe, Edwin D. Worcester* and *Rogers H. Bacon* for appellants. The first certified question

should be answered in the negative and the third in the affirmative. (*Mann* v. *Pentz,* 3 N. Y. 415; *Kinney* v. *Kinney,* 221 N. Y. 133; *Bonnell* v. *Griswold,* 89 N. Y. 122; *Wahl* v. *Barnum,* 116 N. Y. 87.) The second question certified should be answered in the affirmative. (*Roebling Sons Co.* v. *Federal Storage Battery Co.,* 185 App. Div. 430; *Pollard* v. *Bailey,* 20 Wall. 520; *Southworth* v. *Morgan,* 205 N. Y. 293; *Christensen* v. *Eno,* 106 N. Y. 97; *Christensen* v. *Colby,* 110 N. Y. 660; *Chase* v. *Lord,* 77 N. Y. 1; *Carrol* v. *Green,* 92 U. S. 509; *Terry* v. *Little,* 101 U. S. 216; *Mann* v. *Pentz,* 3 N. Y. 415; *Weeks* v. *Love,* 50 N. Y. 568; *Mathez* v. *Neidig,* 72 N. Y. 100; *Griffith* v. *Mangam,* 73 N. Y. 611; *Pfohl* v. *Simpson,* 74 N. Y. 137; *Marshall* v. *Sherman,* 148 N. Y. 9; *Lang* v. *Lutz,* 180 N. Y. 254; *Ford* v. *Chase,* 118 App. Div. 605; 189 N. Y. 504.) The fifth question certified should be answered in the negative. (*Firestone Tire & Rubber Co.* v. *Agnew,* 194 N. Y. 165; *Matter of Roth* v. *Appel,* 181 Fed. Rep. 667; *Assets Realization Co.* v. *Howard,* 211 N. Y. 430.)

*Alexander Pfeiffer* and *Leonard Klein* for respondent. Section 70 of the Stock Corporation Law inures to the benefit of any creditor of a corporation, irrespective of how his debt arose. (*Parmenter* v. *Fitzpatrick,* 135 N. Y. 190; *People ex rel. Westchester Street R. R. Co.* v. *Pub. Serv. Comm.,* 210 N. Y. 456; *Hawyer* v. *Bell,* 141 N. Y. 140; *Matter of Johnston,* 144 N. Y. 563; *Hoffman* v. *Connor,* 76 N. Y. 121; *Isham* v. *Erie Railroad Co.,* 112 App. Div. 612; *National Tube Works Co.* v. *Gilfillan,* 124 N. Y. 302; *Douglas* v. *Ireland,* 73 N. Y. 100; *Flour City Nat. Bank of Rochester* v. *Shire,* 88 App. Div. 401; 179 N. Y. 587; *Boynton* v. *Andrews,* 63 N. Y. 93; *Huntington* v. *Attrill,* 118 N. Y. 365.) The statute imposes a several liability on the defendants; they cannot, therefore, complain that all of the stockholders were

22

[243 N. Y. 333]        Opinion, per LEHMAN, J.        [July,

not served with process.    (*Warth* v. *Moore Blind Stitcher & Overseamer Co.*, 146 App. Div. 28; *Roebling's Sons Co.* v. *Federal Storage Battery Car Co.*, 185 App. Div. 430.) The injunction issued from the Federal court effectively prohibited plaintiff from commencing an action to recover the $20,000 royalty due July 1, 1913, and this item was, therefore, properly allowed as part of plaintiff's claim. (*Shellington* v. *Howland*, 53 N. Y. 371; *Firestone Tire & Rubber Co.* v. *Agnew*, 194 N. Y. 165; *Matter of Mustin*, 21 Am. Bank Rep. 147.)

LEHMAN, J.    The plaintiff, suing in behalf of itself and all other creditors of the Tear Off Bottle Seal Company, has brought an equitable action to compel stockholders of the debtor corporation to pay the amount remaining unpaid on the stock held by them " so far as such liability is necessary to be resorted to in order to pay the claims of the plaintiff herein and the other creditors of the said Tear Off Bottle Seal Company." An interlocutory judgment in favor of the plaintiff has been rendered at Special Term and unanimously affirmed by the Appellate Division. It adjudges that the plaintiff herein is a creditor of Tear Off Bottle Seal Company in the sum of forty-five thousand dollars less dividends received by the plaintiff in the bankruptcy proceedings of Tear Off Bottle Seal Company, and that " each of the defendants herein who has been personally served with the summons herein is personally and severally liable to the plaintiff herein and to the other creditors of Tear Off Bottle Seal Company whose debts shall have been duly proved herein, and who shall establish their right to enforce personal liability for each and every share of the common stock of Tear Off Bottle Seal Company held by such defendant when each such debt was contracted." A reference was ordered to ascertain, among other things, the creditors " entitled to enforce the personal liability of the defendant stockholders, if any " and the amount each of the holders of

the common stock " should be required to pay toward the payment of said debts of Tear Off Bottle Seal Co."

Leave to appeal from the interlocutory judgment herein has been granted by the Appellate Division, which has certified five questions of law for review. The parties agree that answer to the fourth question could not affect the soundness of the interlocutory judgment, and that question, therefore, need not be answered or considered further. The parties are also agreed that the remaining questions should receive a somewhat broad construction in order to bring up for review substantial questions of law upon which determination must rest as to whether the defendant stockholders are liable for the corporate debt to the plaintiff and also as to whether such liability, if it exists, is a several liability, as determined by the courts below. We pass upon the question in regard to the existence of any liability before we consider its nature or whether the present judgment correctly defines and enforces such liability.

The stockholders' liability for corporate debts which the plaintiff seeks to enforce in this action is created by section 70 of the Stock Corporation Law (Cons. Laws, ch. 59), which provides that: " Every holder of shares of stock not fully paid shall be personally liable to the creditors of the corporation, to an amount equal to the amount unpaid on the shares held by him, for debts of the corporation contracted while such shares were held by him." Limitation on the stockholders' liability is imposed by section 73 of the Stock Corporation Law, which provides:

" No action shall be brought against a stockholder for any debt of the corporation until judgment therefor has been recovered against the corporation, and an execution thereon has been returned unsatisfied in whole or in part, and the amount due on such execution shall be the amount recoverable, with costs against the stockholder. No stockholder shall be personally liable for any debt of the

corporation not payable within two years from the time it is contracted, nor unless an action for its collection shall be brought against the corporation within two years after the debt becomes due; and no action shall be brought against a stockholder after he shall have ceased to be a stockholder, for any debt of the corporation, unless brought within two years from the time he shall have ceased to be a stockholder.''

Findings of fact, in large part based upon uncontradicted evidence, establish that on or about December 23, 1909, the plaintiff entered into an agreement in writing with one Edward Augustus Horner whereby the plaintiff granted to the said Horner the sole right and license to manufacture, use and sell certain patented '' bottle caps, seals or closures '' for a term of years; and in consideration of this grant Edward Augustus Horner agreed to pay a license fee or royalty of one cent per gross on each gross of bottle caps, seals or closures sold or delivered by the said Edward Augustus Horner or his assigns. The agreement further provided that the amount of the royalty to be paid to the plaintiff for the period ending July 1, 1911, should be not less than $10,000; for the succeeding year not less than $15,000, and for the year ending July 1, 1913, not less than $20,000 and the same amount for each succeeding year thereafter during the term of the license. After the execution and delivery of the said agreement and on or about the 28th day of December, 1909, Horner, with the consent of the plaintiff, assigned the license agreement to Tear Off Bottle Seal Company which assumed the obligations of said agreement and covenanted to perform and carry them out. The Tear Off Bottle Seal Company has not paid any of the royalties provided for in the agreement. On the ninth day of June, 1913, a petition for the adjudication of the corporation as a bankrupt was filed by certain creditors. It was adjudicated a bankrupt on July 3, 1913. The present action is to compel the payment to the

plaintiff of the royalties amounting to forty-five thousand dollars which were due and owing on July 1, 1913.

This court has already passed upon the sufficiency of the complaint herein (225 N. Y. 369). We there overruled the contention of the defendant that the obligation or debt of the corporation to pay the royalties for the whole term of the license agreement was contracted when the license agreement was transferred to, and its obligations assumed by, the corporation. We held that this indebtedness or obligation was " contracted " within the meaning of the statute (Stock Corporation Law, section 73) only when the time stipulated for payment arrived and that section 70 of the Stock Corporation Law creates a personal liability for such debt as described in this complaint, against one who at that time held shares of stock in the corporation, to an amount equal to the amount unpaid on such shares held by him. No ground for distinction between debts incurred in the ordinary course of business and indebtedness incurred as in this case for royalties under a license agreement is pointed out, and under the broad terms of the statute none may be drawn. It follows that the first certified question must be answered in the affirmative.

Proof of corporate debt is only the first step in establishing statutory liability against the individual stockholder. It must be supplemented with proof that the stockholder to be charged with that liability held, at the time when the debt was contracted, shares of stock which were not fully paid. There are findings of fact which establish that all the defendants held such shares at that time. We may not upon this appeal review the evidence upon which these findings are based. It is said that they are contradicted by other findings. The justice at Special Term has properly included in his findings of fact some which are entirely subsidiary to the ultimate findings, which form the basis for the conclusions of law embodied in the judgment. Without the sub-

sidiary findings, we might be unable to review some of the questions which the defendants seek to raise as to the soundness of the ultimate findings, but upon examination the subsidiary findings appear in no wise contradictory of the ultimate findings.

It appears from the findings that the Tear Off Bottle Seal Company was incorporated with a capital of $10,000 on December 21, 1909, immediately before the plaintiff made the formal license agreement of December 23d with Horner. That agreement acknowledges the receipt of the sum of twenty-five thousand dollars from Horner as part consideration. The only other consideration for the grant of the license was the covenants contained in the agreement, and especially the covenant for the payment of royalties in the future. Horner in entering into this agreement with the plaintiff acted merely as a promoter, in behalf, and in the interest of, the persons who were the directors and incorporators of the Bottle Seal Company. Horner did not pay, and these persons whom he represented did not intend that he should pay, to the plaintiff from his own funds, the consideration mentioned in the agreement.

Within a week after the Tear Off Bottle Seal Company was incorporated its authorized capital was increased to the sum of $1,000,000, consisting of nine thousand shares of common stock of the par value of $100 each, aggregating $900,000, and one thousand shares of preferred stock of the par value of $100 each. On the day after the certificate of increase of the capital stock was filed in the office of the Secretary of State, the corporation entered into an agreement with Horner for the purchase of the license agreement. The purchase price which the directors of the corporation agreed to pay for the license agreement was the sum of $927,500, though they knew that Horner had paid only $25,000, furnished him by others, and that he made the license agreement under circumstances which gave them as individuals and cor-

porate promoters an interest therein, if not its actual ownership. This sum of $927,500 was to be paid $27,500 in cash and $900,000 by the issuance to said Horner or his nominees of 9,000 shares of common stock constituting the entire authorized issue of common stock of Tear Off Bottle Seal Company. Part of this common stock so issued was returned by Horner and his nominee to the treasury of the corporation to be delivered as a bonus to purchasers of the preferred stock of the corporation at the rate of three shares of common stock as a bonus with each share of preferred stock purchased. The corporation has received no other consideration for any of its common stock.

Certainly none of these circumstances indicate that the fair and reasonable value of the license agreement was in excess of the $25,000 which Horner had paid for it or that the corporate directors in good faith placed upon it a value of $927,500 or any sum above $25,000. True, the corporation in assuming the obligations of the license agreement bound itself to pay in the future by way of royalties the additional sum of $320,000 during the term of the agreement. Doubtless the directors hoped to get back this sum with large profits by exploitation of the license, yet the stipulated benefit to be received by the corporation was not the patents, or even the license, free from any burden, but only a license subject to the burden of the obligation to pay the stipulated royalties. Certainly we cannot say as a matter of law that under these circumstances the directors in good faith and in the exercise of an honest discretion placed upon the contract with its large burden of future payments a valuation of $927,500 when they knew that it was acquired by the promoter for the sum of $25,000.

The plaintiff took no part in the fixing of this valuation and no basis exists for an estoppel against it. It consented to the transfer of the license agreement upon the promise of the corporation to carry out the obligations of

the contract. It had the right to obtain payment of the indebtedness of the corporation through the enforcement of corporate liability in any manner permitted by law. If the corporation had issued its stock for full value the capital so raised by the corporation would have constituted a trust fund for the benefit of the general creditors and the plaintiff would have been in the same position as any other corporate creditor. The findings establish that the directors instead chose to issue the common stock without receiving any real consideration for it, placing for that purpose a valuation upon the contract which they knew to be fictitious. The statute under those circumstances imposes upon every holder of the shares of stock so issued personal liability to the creditors of the corporation. It is immaterial that the contract, under which the liability to the plaintiff arises, was the instrument which the directors used in attempt to evade the statutory prohibition against the issue of stock except for full value. Since the plaintiff did not participate in, or consent to, the overvaluation it may enforce the remedy given to all creditors. It follows that the third question must be answered in the negative.

We have already stated that the plaintiff's claim of indebtedness by the corporation is based upon the corporate agreement to pay minimum royalties of $10,000 for the year ending July 1, 1911; $15,000 for the year ending July 1, 1912, and $20,000 for the year ending July 1, 1913, and that a petition in bankruptcy was filed against the corporation in June, 1913, a few days before the last named payment became due. Claim for this amount was proven and allowed in the bankruptcy proceedings and dividends thereon paid. No contention has been made that as to the plaintiff's claim for royalties payable when the petition in bankruptcy was filed, the proceedings taken in the bankruptcy court do not constitute excuse for non-compliance with the provisions of section 73 of the Stock Corporation Law, which constitute limitations

upon the personal liability of stockholders. All question as to the effect of such proceedings has been concluded by the decision of this court in *Firestone Tire & Rubber Company* v. *Agnew* (194 N. Y. 165). We think that the bankruptcy proceedings are similar excuse for non-compliance with the statutory provisions in regard to plaintiff's claim for $20,000 not due and payable when the petition in bankruptcy was filed. So long as the injunction issued by the bankruptcy court stood without modification, the plaintiff could not bring an action against the corporation. If the injunction had been modified, the bringing of the action would have been merely an empty gesture for all the assets of the corporation were subject to distribution in the bankruptcy proceedings. Even if we were to assume that the bankruptcy court erred in allowing claim for the part of the debt not then due and payable, it yet remains true that the court did take proof and allow it. (Bankruptcy Act, section 63.) If error was made by the bankruptcy court, and we do not attempt now to pass upon such question, such error has caused no injury but only benefit to the defendants, for the claim against them is reduced by the amount of the dividend. In considering the effect of the statute now invoked, this court has heretofore pointed out: "Ordinarily statutory remedies must be strictly pursued. We are not disposed, however, in this case to adhere to the strict letter of the statute, but we must observe the spirit and intent of the Legislature in adopting it." (*Card* v. *Groesbeck*, 204 N. Y. 301.) Obedience to the injunction of the Federal court, especially when coupled with reliance upon its order purporting to adjudicate plaintiff's entire claim, constitutes excuse for failure of the plaintiff to bring any action for the royalties due on July 1, 1913. (See, also, *Shellington* v. *Howland*, 53 N. Y. 371; *Hunting* v. *Blun*, 143 N. Y. 511; *Hirshfeld* v. *Bopp*, 145 N. Y. 84.) The fifth question should, therefore, be answered in the affirmative.

The answer to the only remaining question we must consider depends upon whether the liability of the defendant stockholders is several. The action, as stated above, was brought in equity. All the common stockholders are named as defendants, and the relief asked is a judgment " that said defendant stockholders be required to contribute to and pay *pro rata* towards the payment of all such debts of, and claims against, said Tear Off Bottle Seal Co. contracted while such stock was held by them respectively." The complaint further asks for an accounting to ascertain the amount of the liability. Thirty-five of the defendants named have not been served nor have they or any of them appeared in the action, and there is express finding in the decision that no proof has been offered " that said defendants or any of them at any time were beyond the jurisdiction of this court or insolvent." The action has proceeded against the defendant stockholders who were served and the judgment adjudicates that the liability of these stockholders is a several liability. The Appellate Division has certified the question whether in such case the complaint should be dismissed.

In the absence of statutory provision a stockholder of a corporation who has fully complied with all contractual obligations to the corporation and has committed no wrong towards it is not liable for any of the corporate debts. He may be compelled even in the absence of statute to return assets of the corporation which constitute a trust fund for the payment of its debts, if by unlawful distribution of such assets among the stockholders, the corporation is stripped of funds with which to pay its creditors. So, too, unpaid subscriptions are, at least in American jurisdictions, regarded as a trust fund for the benefit of general creditors and payment may be enforced by bill in equity. The equitable principle has long since been embodied in the Revised Statutes of this State, but the principle antedates the statute and is of general application. (See *Mann* v. *Pentz*, 3 N. Y.

415, at page 422.) In such cases, liability depends upon contractual obligation to the corporation which may be enforced in equity, and in some jurisdictions, even at law, for the protection of unpaid creditors. (*Griffith* v *Mangam*, 73 N. Y. 611; *Christensen* v. *Eno*, 106 N. Y. 97.) Where, however, there is no contractual obligation to the corporation and where no trust fund which should be held for the benefit of general creditors has been either withheld from the corporation by stockholders or unlawfully distributed to the stockholders by the corporation, liability, if any, on the part of a stockholder is wholly the creature of statute. Here the corporation did not receive the full nominal value for the stock, but it issued the stock without expectation of further payment for the stock and without express or implied promise of further payment. Indeed, there is no finding that the defendants who were not directors ever knew that the stock they received was not originally issued for full value. The Legislature may under such circumstances provide a remedy for an unpaid creditor, but the difference between the nominal value of the stock and the amount received does not, under the decisions of this court, constitute a trust fund. (*Southworth* v. *Morgan*, 205 N. Y. 293; *Milliken* v. *Caruso*, 205 N. Y. 559.) The Legislature here has provided such remedy and created a statutory liability to creditors even where no contractual liability to the corporation exists. The question which we must now decide is whether that liability is a joint liability which may be enforced only by suit in equity against all the solvent stockholders within the jurisdiction, or is a several liability which may be enforced against such stockholders whom the plaintiff may select.

Action by a creditor against one stockholder can be sustained only where the statute by its terms creates a several liability. (See *Patterson* v. *Lynde*, 106 U. S. 519; Cook on Corporations [8th edition], section 222.) Slight differences in the terms of statutes may at times

lead to varying interpretations of legislative intent, and decisions as to the effect of other statutes may furnish but uncertain guidance in the construction of the statute now under consideration. Prior to the enactment in 1901 of the provisions of law which now fix liability of corporate stockholders for corporate debts, general statutes or special charters had long imposed upon corporate stockholders liability of much wider extent, and by the express terms of the statutes that liability was declared to be *joint and several,* or even several. The Legislature under these statutes left little room for judicial definition. The function of the courts was generally confined, in actions either at law or in equity, to the enforcement of the liability clearly defined by the Legislature. Nevertheless in the case of *Marshall* v. *Sherman* (148 N. Y. 9, 21) this court in an opinion by O'Brien, J., expressed the view that as a general rule "it is quite well established that in a case like this an action at law by a single creditor against a single stockholder for the recovery of a specific sum of money cannot be maintained in our courts under our statutes declaring the liability of stockholders. In such cases the liability must be enforced in equity in a suit brought by or in behalf of all the creditors against all the stockholders, wherein the amount of the liability and all the equities can be ascertained and adjusted." (See, also, *Griffith* v. *Mangam,* 73 N. Y. 611.)

The language of the new statute might be open to the construction that the Legislature intended that the stockholders should be severally liable, yet we may not disregard as entirely without significance, that it omitted the express provision for several liability contained in the statute it superseded or amended. That omission did not escape notice of this court in *Lang* v. *Lutz* (180 N. Y. 254). Though not necessary to the decision the opinion per O'Brien, J., states: "As to all cases, which might arise thereafter, I assume that it [the amendatory act of

1901] prescribes. a new rule of liability under which the remedy available to a creditor is intended to be by way of an equitable action, or proceeding; wherein all the stockholders of the corporation should be made equally and ratably responsible for the payment of corporate debts.'

The only case in which the question of whether liability under the statute is joint or several has been squarely presented to this court is *Warth* v. *Moore Blind Stitcher & Overseamer Co.*, (146 App. Div. 28; affd., 207 N. Y. 673.) In that case an action in equity was brought by a creditor who, as in this case, failed to serve all the stockholders. All the justices in the Appellate Division agreed that the action should be dismissed, but there was some difference of opinion as to the ground for dismissal. The opinion of LAUGHLIN, J., treats as a dictum of doubtful force the statement quoted above from the opinion in *Lang* v. *Lutz,* but holds that in any event several liability may not be adjudicated in an equitable action. (See, also, *Roebling Sons Co.* v. *Federal Storage B. C. Co.*, 185 App. Div. 43.) Though the decision of the Appellate Division in the *Warth* case was affirmed in this court without opinion, the subsequent case of *Mosler Safe Co.* v. *Guardian Trust Co.* (208 N. Y. 524) made clear that this court had affirmed not on the ground that several liability may not be enforced by action in equity but on the ground that the statute creates no several liability. The later case was brought under a statute which expressly created a joint and several liability, and this court stated: " Since the right of action is given by statute, and the liability of the defendants is joint and several, the remedy is the same in equity as at law. There is no conflict between this conclusion and what was held in *Warth* v. *Moore Blind Stitcher & Overseamer Co.* (146 App. Div. 28; affd. in this court without opinion 207 N. Y. 673)."

No valid distinction can be drawn between the case now under consideration and the case of *Warth* v. *Moore*

*Blind Stitcher & Overseamer Co. (supra).* The statute creates a liability against stockholders which in the absence of statute would not exist. The established policy of our law is that the liability of a stockholder for corporate indebtedness may be enforced only by action in equity, in which all stockholders subject to the same liability must be joined, unless the statute otherwise provides. The case of *Warth* v. *Moore Blind Stitcher & Overseamer Co. (supra)* is clear authority that the statute under consideration creates no several liability. It follows that the judgments of the courts below should be reversed and that the complaint should be dismissed unless the other solvent stockholders within the jurisdiction are served in the action.

We construe the second certified question as meaning nothing more. So construed, it should be answered in the affirmative. The trial court was not, however, compelled to dismiss unless the plaintiff failed to bring in the necessary parties when need of their presence was made clear. Under the liberal practice now prevailing in this jurisdiction, the court would probably have granted application for reasonable adjournment if the court had held that it could not render judgment unless all the stockholders of the corporation were joined. This court should not under the circumstances order the complaint dismissed but should remit the case to the Supreme Court for appropriate proceeding. If application is not promptly made by the plaintiff in that court, that court may still dismiss the complaint on motion of the defendants or any of them.

The judgments should be reversed, with costs to appellant Webb in all courts. Certified questions answered as indicated in this opinion, and the case remitted to the Supreme Court for further proceedings as indicated in opinion.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.